---
**UNITED STATES DISTRICT COURT**      **EASTERN DISTRICT OF TEXAS**
---

LEON WILLIAMS,                          §
                                        §
       Plaintiff,                   §
                                        §
*versus*                                §    CIVIL ACTION NO. 1:04-CV-342
                                        §
ALBERTO R. GONZALES,                    §
Attorney General of the United States,  §
                                        §
       Defendant.                   §

### MEMORANDUM AND ORDER

Pending before the court is Defendant Alberto R. Gonzales's ("Gonzales") Motion to Dismiss, or Alternatively, for Summary Judgment (#22). Gonzales seeks dismissal or summary judgment on Plaintiff Leon Williams's ("Williams") action alleging racial discrimination in employment arising under the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-2000h-6. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I.    <u>Background</u>

Williams, an African American, is employed as the Supervisor of Education in the Education and Recreation Department of the United States Penitentiary, Federal Correctional Center in Beaumont, Texas ("FCC-Beaumont"), part of the United States Bureau of Prisons ("BOP"). Williams's job responsibilities include providing educational opportunities and leisure activities to inmates. He supervises approximately seventeen BOP employees, who, in turn,

supervise eighty to ninety inmate workers.  During an investigation of alleged improprieties involving an employee under his supervision, Williams was asked to provide an affidavit concerning the events in question.  In his affidavit, dated May 19, 2000, Williams described giving an inmate four cases of soda as an informal resolution of the inmate's claim that he was not being accurately credited for hours worked.  Based on his statement, Williams was subject to an investigation for violating the BOP's Standards of Employee Conduct by inappropriately using government property.  On October 10, 2003, Associate Warden Alfonso Haynes, who is African American, proposed a three-day suspension as punishment.  Williams responded to the disciplinary charge in a letter dated October 19, 2000, in which he acknowledged the underlying facts of the infraction, but denied that such facts constituted wrongdoing.  In light of Williams's previously exemplary service, Warden Ernest Chandler ("Chandler"), who is Caucasian, assessed a reduced suspension of one day.

Williams served the one-day suspension on December 18, 2000.  On March 5, 2001, he filed an Equal Employment Opportunity ("EEO") class action complaint against Chandler and the BOP, alleging racial discrimination, retaliation, and the existence of a hostile work environment on behalf of seven named class members.  In addition to the one-day suspension, Williams complained of other acts of purported harassment by Chandler, specifically his less favorable treatment of African Americans at meal times, his refusal to give an African American an award personally, verbally threatening Williams with discipline, twice initiating disciplinary investigations into Williams's conduct, deliberately understaffing Williams's department, and making negative comments about the sanitation of Williams's department during an independent performance review.

The administrative judge ("AJ") refused to certify the case as a class action and ultimately rejected Williams's claims.  While finding that the complaint set forth a *prima facie* case of race discrimination, the AJ held that Williams had failed to overcome the BOP's articulated legitimate, nondiscriminatory reason for its action, namely, that Williams was punished for his violation of the BOP's Standards of Employee Conduct.  Additionally, the AJ determined that Williams had not established a *prima facie* case of retaliation, as no evidence suggested that Williams had engaged in protected EEO activity prior to the alleged retaliation.  The AJ did not identify hostile work environment, a claim raised in this action, as an issue.  The AJ's rulings were formally entered on September 17, 2003, and Williams's subsequent appeal was denied by the Equal Employment Opportunity Commission ("EEOC") on February 26, 2004.  After receiving a right-to-sue letter from the EEOC, Williams filed this civil action in federal district court on June 6, 2004, naming John Ashcroft ("Ashcroft"), Attorney General of the United States, the head of the BOP, as the defendant.  *See* 42 U.S.C. § 2000e-16.  On February 28, 2005, Gonzales, following his confirmation as Attorney General of the United States, was substituted for Ashcroft.

II.   Analysis

A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "[he] must adduce evidence to support each element of [his] defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). To warrant judgment in his favor, the movant ""must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961.   The moving party, however, need not negate the elements of the nonmovant's case.   *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.   *See Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003); *Rushing*, 185 F.3d at 505.   "[T]he court must review the record 'taken as a whole.'"   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).   All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."   *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001).   The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor.   *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Lincoln Gen. Ins.*

*Co.*, 401 F.3d at 349; *Martin*, 353 F.3d at 412; *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin*, 307 F.3d at 372.  The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)).  "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Anderson*, 477 U.S. at 247-48; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*,  292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002).

Summary judgment is mandated if the nonmovant fail to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.    Admissibility of Expert Witness Affidavit

Gonzales points out that Williams failed to designate his expert witness, Professor Robert J. Newman ("Newman"), in a timely manner. In an affidavit attached to Williams's response to Gonzales's summary judgment motion, Newman analyzes the probability of a disproportionate percentage of disciplinary cases directed at African Americans being a matter of random chance in a race-neutral disciplinary process. Newman concludes that the probability of the ratio of discipline applied to African Americans compared to non-class members in a race-neutral environment is only 1.9% for supervisory staff and 14.2% for other staff. Williams argues that a fact-finder could infer from Newman's statistical analysis that Chandler's actions towards Williams were dictated by illegitimate racial animus. Williams, however, failed to disclose his intention to designate Newman as an expert in a timely fashion.

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires the disclosure of expert testimony prior to trial. Specifically, the rule provides that:

> In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

Fᴇᴅ. R. Cɪᴠ. P. 26(a)(2)(A).  Additionally, to eliminate unfair surprise, the rules also require the

parties to disclose the substance of any expert opinion testimony and the basis of such opinion.

*See Soll v. Provident Life & Acc. Ins.*, No. Civ. A. 00-3670, 2002 WL 1461891, at *3 (E.D. La.

July 5, 2002) (citing Fᴇᴅ. R. Cɪᴠ. P. 26(a)(2)(B)).  This rule states:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with
> respect to a witness who is retained or specially employed to provide expert
> testimony in the case or whose duties as an employee of the party regularly involve
> giving expert testimony, be accompanied by a written report prepared and signed
> by the witness.  The report shall contain a complete statement of all opinions to be
> expressed and the basis and reasons therefor; the date or other information
> considered by the witness in forming the opinions; any exhibits to be used as a
> summary of or support for the opinions; the qualifications of the witness, including
> a list of all publications authored by the witness within the preceding ten years; the
> compensation to be paid for the study and testimony; and a listing of any other
> cases in which the witness has testified as an expert at trial or by deposition within
> the preceding ten years.

Fᴇᴅ. R. Cɪᴠ. P. 26(a)(2)(B).

In conjunction with this requirement, Rule 26(a)(2)(C) mandates that such expert

disclosures "be made at the times and in the sequence directed by the court."  Fᴇᴅ. R. Cɪᴠ. P.

26(a)(2)(C).  Here, in an agreed scheduling order entered February 16, 2005, the original deadline

for Williams to designate expert witnesses was May 2, 2005.  After the deadline had already

passed, Williams requested additional time to designate expert witnesses on May 9, 2005.  To

accommodate Williams, the court extended the deadline to June 20, 2005.  Yet, Williams

neglected to mention, much less designate, Newman as a potential expert witness until November

9, 2005, when he attached Newman's affidavit to a filing entitled Plaintiff's Opposition to Motion

for Summary Judgment.

A trial court's decision to exclude experts not properly designated is reviewed for abuse

of discretion.  *See Rushing*, 185 F.3d at 509.  In the Fifth Circuit, a trial court's decision to

8

"'exclude evidence as a means of enforcing a pretrial order" will not be disturbed "absent a clear abuse of discretion.'"  *Id.* (quoting *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir.), *cert. denied*, 519 U.S. 811 (1996); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)); *see Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979) (holding that a trial court has "broad discretion to preserve the integrity and purpose of the pretrial order").  A trial court has "formidable case-management authority."  *Id.* (citing *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)); *see* FED. R. CIV. P. 16(f) (authorizing sanctions under Rule 37(b)(2) for non-compliance with scheduling orders); FED. R. CIV. P. 37(b)(2) (authorizing a trial court to refuse to admit evidence or permit witnesses linked to a party's failure to follow a court order).  Delay in obeying discovery deadlines is "a particularly abhorrent feature of . . . trial practice," and causes "disrespect for lawyers and judicial process."  *Geiserman*, 893 F.2d at 792. "Adherence to reasonable deadlines is critical to restoring integrity in court proceedings."  *Id.*

A trial court should consider the following four factors when determining whether to exclude expert testimony:  "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Id.* at 791 (citing *Bradley v. United States*, 866 F.2d 120, 124 (5th Cir. 1989)); *see Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004); *Rushing*, 185 F.3d at 508; *Barrett v. Atlantic Richfield Co.*, 93 F.3d 375, 380 (5th Cir. 1996).  The importance of a witness's testimony "'cannot singularly override the enforcement of local rules and scheduling orders.'"  *Rushing*, 185 F.3d at 508 (quoting *Geiserman,* 893 F.2d at 791); *see Barrett*, 95 F.3d at 381.  Disruption of the court's discovery schedule and the opponent's preparation constitutes sufficient prejudice to militate in favor of the

exclusion of testimony.  *See Geiserman*, 893 F.2d at 791; *see also Barrett*, 95 F.3d at 381.

Moreover, the possibility of continuance must be counterbalanced by the additional delay and

increased expense that would result.  *See Hamburger*, 361 F.3d at 883 ("[b]ecause of a trial

court's need to control its docket, a party's violation of the court's scheduling order should not

routinely justify a continuance") (citing *Geiserman*, 893 F.2d at 791).  The goal of imposing the

sanction of striking an expert witness is not to ameliorate prejudice, but rather to punish the

offender and deter future dilatory conduct.  *See Rushing*, 185 F.3d at 508 (citing *Sierra Club*, 73

F.3d at 573; *Chilcutt v. United States*, 4 F.3d 1313, 1324 n.30 (5th Cir. 1993), *cert. denied*, 513

U.S. 979 (1994)).  Accordingly, the fact that potential prejudice may be cured by granting a

continuance is not dispositive.

In balancing the factors under the Fifth Circuit's four-part test, the court is of the opinion

that Newman's affidavit should not be considered as summary judgment evidence.  First, Williams

has proffered no explanation as to why he failed to designate Newman as an expert in a timely

manner.  In the absence of any mitigating excuse for the delay, the first factor must militate

against the admission of Newman's affidavit.  *See Geiserman*, 893 F.2d at 792; *Robbins v. Ryan's

Family Steak Houses E., Inc.*, 223 F.R.D. 448, 454 (S.D. Miss. 2004) (holding that where a party

offers no explanation for failing to designate an expert in a timely manner, this factor supports

striking the expert).  The second factor arguably favors the consideration of Newman's affidavit

in view of the general dearth of evidence in this case of disparate treatment.  The third factor

supports striking Newman's affidavit because the defendant would otherwise be unduly prejudiced.

Gonzales asserts that, had he known Williams intended to produce an expert affidavit, he would

have retained an expert on statistics and presented a controverting affidavit.  *See Geiserman*, 893 F.2d at 791 (holding that hindrance of an adverse party's preparation constitutes prejudice).

As to the fourth factor, while continuing the case might diminish the prejudice to Gonzales, it would result in increased cost and delay.  *See Hamburger*, 361 F.3d at 883.  Additionally, a court should not condone dilatory conduct by routinely extending the deadline to designate expert witnesses.  *See Geiserman*, 893 F.2d at 791; *see also Rushing*, 185 F.3d at 508.  Therefore, due to the disruption of the court's scheduling order, which has already been adjusted to accommodate Williams, counsel's failure to provide any explanation for the delay, and the prejudice to Gonzales, the court will not consider Newman's affidavit in ruling on the motion for summary judgment.

C.      Claims Brought Under 42 U.S.C. §§ 1981 and 1983

It is well settled that "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees."  *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) (finding constitutional claims to be preempted by Title VII).  It has long been recognized that Title VII provides the sole remedy for racial discrimination claims asserted by federal employees.  *See Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976); *Jackson*, 99 F.3d at 716; *Perez v. FBI*, 71 F.3d 513, 515 (5th Cir. 1995), *cert. denied*, 517 U.S. 1234 (1996); *Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992); *Watkins v. Lujan*, 922 F.2d 261, 263 (5th Cir. 1991); *Hampton v. IRS*, 913 F.2d 180, 182-83 (5th Cir. 1990).  There is abundant "Supreme Court and Fifth Circuit precedent to the effect that Title VII provides both the exclusive cause of action and the exclusive remedy for federal employees who wish to assert claims of employment discrimination."  *Perez*, 71 F.3d at 515 (concluding that court lacked jurisdiction to address

federal employee's *Bivens* claims); *see Rowe*, 967 F.2d at 189 (holding claims of racial discrimination in employment brought by federal employee under §§ 1981, 1983, and 1985(3) to be preempted by Title VII); *Watkins*, 922 F.2d at 263 (rejecting federal employee's claim of racial discrimination under § 1981); *Hampton*, 913 F.2d at 182-83 (finding a claim for intentional infliction of emotion distress to be preempted by Title VII).

Indeed, as early as 1976, the United States Supreme Court acknowledged that Title VII constitutes the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown*, 425 U.S. at 829 (rejecting a § 1981 claim of racial discrimination brought by a federal employee).  The Supreme Court distinguished the situation of a federal employee from a private sector employee, who may pursue a parallel claim under § 1981, noting the more comprehensive administrative and judicial enforcement scheme available to a federal employee under § 717 of Title VII, 42 U.S.C. § 2000e-16.  *See id.* at 832-33.  The court reasoned that "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Id.* at 833.

The Fifth Circuit has "interpreted the Supreme Court's mandate in *Brown* to mean that, when a complainant against a federal employer relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is 'not sufficiently distinct to avoid' preemption." *Pfau v. Reed*, 125 F.3d 927, 932 (5th Cir. 1997), *judgment vacated on other grounds*, 525 U.S. 801 (1998) (holding intentional infliction of emotional distress claim to be preempted) (quoting *Rowe*, 967 F.2d at 189).  Williams fails to articulate any factual distinction between the basis for his Title VII claim and his § 1981 and § 1983 claims.  Because Williams's

12

allegations of "constitutional violations arise out of the same facts as his employment discrimination claims, . . . they are preempted by Title VII and cannot afford an independent ground for relief." *Jackson*, 99 F.3d at 716.

D.      Title VII—General Burden of Proof

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)).

"Title VII discrimination can be established through either direct or circumstantial evidence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000), *cert. denied*, 535 U.S. 1078 (2002)); *accord Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213, 1216 (5th Cir. 1995); *see Desert Palace, Inc.*, 539 U.S. at 98-101. "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell*, 235 F.3d at 222; *see Reeves*, 530 U.S. at 143; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Laxton*, 333 F.3d at 578; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without

inference or presumption." *West*, 330 F.3d at 384 n.3; *Sandstad v. CB Richard Ellis, Inc.*, 309

F.3d 893, 897 (5th Cir.), *cert. denied*, 539 U.S. 926 (2002) (citing *Mooney*, 54 F.3d at 1217).

Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish

a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be

inferred, thus creating a rebuttable presumption of intentional discrimination.  *See Reeves*, 530

U.S. at 142; *Laxton*, 333 F.3d at 578; *Russell*, 235 F.3d at 222; *Wallace*, 80 F.3d at 1047 (citing

*Meinecke v. H&R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995)).  "'To establish a *prima facie*

case, a plaintiff need only make a very minimal showing.'" *Nichols v. Loral Vought Sys. Corp.*,

81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760

F.2d 633, 639 (5th Cir. 1985)).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to

articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision.

*See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003); *Reeves*, 530 U.S. at 142; *McDonnell

Douglas Corp.*, 411 U.S. at 802; *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th

Cir. 2004);  *Laxton*, 333 F.3d at 578 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219

(5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)); *West*, 330 F.3d at 384 (citing *Russell*, 235

F.3d at 222); *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir.

2001).  "This burden is one of production, not persuasion; it 'can involve no credibility

assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

509 (1993)); *see West*, 330 F.3d at 385; *Sandstad*, 309 F.3d at 898; *Crawford v. Formosa Plastics

Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  "The [employer] must clearly set forth, through the

introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,'

14

would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (quoting *Hicks*, 509 U.S. at 507) (emphasis in original); *accord Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)); *see Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385.  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253); *accord Hicks*, 509 U.S. at 507-08; *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005), *pet. for cert. filed*, 74 U.S.L.W. 3232 (U.S. Sept. 27, 2005) (No. 05-406); *Laxton*, 333 F.3d at 578; *Crawford*, 234 F.3d at 902; *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001).

In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff must offer sufficient evidence to create a genuine issue of material fact "'"either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative)."'" *Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003) (quoting *Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc.*, 285 F. Supp. 2d 1180, 1197-98 (N.D. Iowa 2003))).  If

the plaintiff demonstrates that race was a "motivating factor" in the employment decision, the defendant must then prove "'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid*, 376 F.3d at 312).  The plaintiff will prevail if the employer fails to carry this burden.  *See id.*

Under the pretext alternative approach, the "plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (quoting *Reeves*, 530 U.S. at 1403; *Wallace*, 271 F.3d at 220).  "An explanation is false or unworthy or credence if it is not the real reason for the adverse employment action." *Id.* (citing *Sandstad*, 309 F.3d at 899).  "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147 (emphasis in original); *see Kanida*, 363 F.3d at 537-74; *West*, 330 F.3d at 385; *Ratliff v. City of Gainesville*, 256 F.3d 355, 360-62 (5th Cir. 2001).  "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578; *see Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 147). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147; *accord Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385.  Hence, the plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves*, 530 U.S. at 148;

16

*Ratliff*, 256 F.3d at 362; *Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001); *Russell*, 235 F.3d at 223.

Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49); *accord Laxton*, 333 F.3d at 578; *Crawford*, 234 F.3d at 902. The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id.* at 903.

E.      *Prima Facie* Case of Disparate Treatment under Title VII

To establish a *prima facie* case of disparate treatment, the plaintiff must show that:

(1)     he is a member of a protected class;

(2)     he is qualified for the position;

(3)     he suffered an adverse employment action; and

(4)     others outside the class who were similarly situated were treated more favorably than he.

*See Abarca v. Metropolitan Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Okoye*, 245 F.3d at 512-13; *Rutherford v. Harris County*, 197 F.3d 173, 183 (5th Cir. 1999); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, 525 U.S. 1000 (1998).

In this instance, Williams is undoubtedly a member of a protected class, is qualified for the position, and arguably suffered an adverse action by being suspended for one day without pay.

17

To prevail, however, he must demonstrate that employees outside his protected class received preferential treatment in circumstances nearly identical to his. *See Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005), *pet. for cert. filed*, 74 U.S.L.W. 3248 (U.S. Oct. 10, 2005) (No. 05-478) (citing *Mayberry v. Vought Aircraft Corp.*, 55 F.3d 1086, 1019-92 (5th Cir. 1995)); *Keelan,* 407 F.3d at 345; *Aldrup v. Caldera*, 274 F.3d 282, 287 n.23 (5th Cir. 2001); *Wallace*, 271 F.3d at 221; *Okoye*, 245 F.3d at 512-13; *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001).   Hence, he must demonstrate that "white [non-protected] employees were treated differently under circumstances nearly identical to his" involving violations of the BOP's Standards of Employee Conduct. *Mayberry*, 55 F.3d at 1090; *accord Bryant*, 413 F.3d at 478; *Okoye*, 245 F.3d at 514; *Wyvill*, 212 F.3d at 304; *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000); *Bauer*, 169 F.3d at 968.

Williams, however, does not present sufficient evidence to support a finding that he was similarly situated to other employees who allegedly received less stringent discipline for participating in comparable activities.   Specifically, he does not show that any non-minority employees went unpunished for engaging in nearly identical conduct. *See Mayberry*, 55 F.3d at 1090; *see also Aldrup*, 274 F.3d at 287 n.23; *Wallace*, 271 F.3d at 221.  Williams suggests that the statistical evidence in Newman's affidavit suffices to satisfy this prong of his *prima facie* case. The affidavit, however, even if the court were to consider it, does not demonstrate that similarly situated, non-class employees were treated differently for engaging in similar behavior.

First, statistics are insufficient, standing alone, to prove a disparate treatment case.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004); *Carter v. Three Springs*

18

*Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984)); *accord Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997); *see also EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1185-86 (5th Cir. 1996) ("statistics will have little direct bearing on the specific intentions of the employer when dismissing a particular individual") (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994)); *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992) ("proof of . . . discriminatory intent . . . by statistics alone would be a challenging endeavor").

Second, Williams, in this context, is not merely an employee or supervisor of the BOP. Rather, he is an employee and supervisor of the BOP who, at the very least, engaged in behavior constituting a colorable disciplinary infraction.  Williams asserts that he "does not have to show that a non-class member engaged in the identical conduct as he was treated differently." Williams's argument, however, would create a group of "similarly situated" individuals without the requisite bright-line to render the group analytically distinct in context, as there is no evidence as to how many of the group identified by Williams engaged in conduct similar to his.  If the court were to adopt Williams's position, evidence that *any* non-class member employee of the BOP was not disciplined in the relevant time period, without regard to his or her behavior, would constitute evidence of disparate treatment.  Such "disparate treatment," premised not upon prohibited, discriminatory animus, but rather on performance and conduct, is entirely legitimate.  *See Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir. 2004); *see also Raytheon*, 540 U.S. at 50; *Hockman*, 407 F.3d at 330.  The proper inquiry is whether any non-class members who engaged in "nearly identical" behavior involving violations of the BOP's Standards of Employee Conduct

were treated differently by receiving a less severe disciplinary sanction. *See Bryant*, 413 F.3d at 478 (quoting *Okoye*, 245 F.3d at 514).

Furthermore, a demonstration of substantial similarity generally requires a showing that a common supervisor was involved in the decision making. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (8th Cir. 2000). "When 'different decision-makers are involved, two decisions are rarely similarly situated in all relevant aspects.'" *Id.* (quoting *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 910 (8th Cir. 1999)). Accordingly, decisions made by different supervisors "are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Id.* Williams claims that similar conduct was widely tolerated during his tenure at the BOP; Chandler, however, testified that he had never permitted such behavior to go unpunished. Significantly, Williams fails to provide factual details regarding a single incident of similar conduct that was permitted by Chandler. Hence, even if such conduct were condoned in the past, such evidence is unavailing to Williams if the relevant decision-maker was not Chandler.

Thus, Williams has not presented sufficient evidence to support a finding that he was similarly situated to any non-class member who received preferential treatment. *See Aldrup*, 274 F.3d at 287; *see also Wallace*, 271 F.2d at 221 (citing *Wyvill*, 212 F.3d at 304-05; *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)). Because Williams has failed to adduce adequate evidence to show that other, non-black employees who were similarly situated were treated more favorably, he has not established a *prima facie* case of disparate treatment, precluding an inference that the employer unlawfully discriminated against him. *Id.* (citing *Reeves*, 530 U.S. at 146-48). Accordingly, Gonzales is entitled to summary judgment on Williams's disparate treatment claim.

20

F.    *Prima Facie* Case of Retaliation under Title VII

Williams further asserts that Gonzales retaliated against him for participating in an action brought under the Fair Labor Standards Act ("FLSA") seeking back pay for uncompensated overtime worked by BOP employees.  *See* 29 U.S.C. §§ 201-219.  Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

The anti-retaliation provision has two components—an opposition clause and a participation clause.  *See Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997).  "The opposition clause of § 2000e-3(a) requires the employee to demonstrate that he had at least a 'reasonable belief' that the practices he opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996); *see Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002). The participation clause, however, does not include the "reasonable belief" requirement and provides broad protection to an employee who has participated in a Title VII proceeding.  *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989); *see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997), *cert. denied*, 523 U.S. 1122 (1998). Under both clauses, the employee must demonstrate that his opposition to perceived unlawful activity was a motivating or determining factor in the adverse employment action taken by his

21

employer, *i.e.*, there must be a causal connection.  *See Baker v. American Airlines, Inc.*, ___ F.3d ___, No. 04-11486, 2005 WL 3005487, at *4 (5th Cir. Nov. 9, 2005); *Evans v. City of Houston*, 246 F.3d 344, 353-54 (5th Cir. 2001); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684-85 (5th Cir. 2001).

The Fifth Circuit has held that "the familiar *McDonnell Douglas* burden-shifting framework applies in Title VII retaliation cases." *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001), *cert. denied*, 536 U.S. 922 (2002) (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 401-02 (5th Cir.), *cert. denied* 532 U.S. 937 (2001)); *see Septimus v. University of Houston*, 399 F.3d 601, 607-08 (5th Cir. 2005); *Aldrup*, 274 F.3d at 286; *Medina*, 238 F.3d at 684.  "The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context." *Rios*, 252 F.3d at 380; *accord Patrick v. Ridge*, 394 F.3d 311, 315 n.10 (5th Cir. 2004); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Aldrup*, 274 F.3d at 286; *Medina*, 238 F.3d at 684.  Therefore, after the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions.  *See Baker*, 2005 WL 3005487, at *4; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Aldrup*, 274 F.3d at 286; *Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684.  If the employer meets its burden, the employee then bears the ultimate burden of showing that the reasons given by the employer are a pretext for retaliation.  *See Septimus*, 399 F.3d at 608; *Gee*, 289 F.3d at 345; *Aldrup*, 274 F.3d at 286; *Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684.  To carry his ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred "but for"

the employee's participation in the protected activity.  *See Septimus*, 399 F.3d at 608; *Mato*, 267 F.3d at 450; *Rios*, 252 F.3d at 380; *Evans*, 246 F.3d at 354.

To establish a *prima facie* case of retaliation, a plaintiff must show:

(1)     he engaged in statutorily protected activity under Title VII;

(2)     an adverse employment action occurred; and

(3)     a causal connection exists between the protected activity and the adverse employment action.

*See Baker*, 2005 WL 3005487, at *4; *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *Roberson v. Alltel Info. Sys.*, 373 F.3d 647, 655 (5th Cir. 2004); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Foley v. University of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003); *Zaffuto v. City of Hammond*, 308 F.3d 485, 492 (5th Cir. 2002); *Perez*, 307 F.3d at 325.

"An employee has engaged in protected activity when he has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas*, 144 F.3d at 372-73 (quoting 42 U.S.C. § 2000e-3(a)); *accord Baker,* 2005 WL 3005487, at *4; *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).  Williams argues that he engaged in protective activity when he provided testimony during an investigation of an FLSA claim prior to his suspension.  Providing testimony, however, in an overtime dispute, under a statute other than Title VII, does not constitute protected activity under Title VII.  *See* 42 U.S.C. § 2000e(a); *Baker*, 2005 WL 3005487, at *4; *Douglas*, 144 F.3d at 372-73; *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 608, 616-17 (W.D. Tex. 2005).

Because he is unable to establish a *prima facie* case, Williams cannot prevail on his Title VII retaliation claim.  As the record does not reflect that he engaged in protected activity under Title VII, Williams has not made the necessary showing to give rise to an inference that Gonzales retaliated against him for engaging in such activity.  Therefore, summary judgment in favor of Gonzales is proper with respect to Williams's retaliation claim.

G.    Hostile Work Environment Racial Harassment under Title VII[1]

Williams contends that he was a victim of racial harassment.  To establish a *prima facie* case of racial harassment by a supervisor with immediate or successively higher authority over the employee, a plaintiff must show that:

(1)    he belongs to a protected class;

(2)    he was subject to unwelcome harassment;

(3)    the harassment was based on race; and

(4)    the harassment affected a term, condition, or privilege of employment.

*See Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003); *Felton v. Polles*, 315 F.3d 470, 484 (5h Cir. 2002); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, 516 U.S. 974 (1995).  When a supervisory employee is involved, once the plaintiff satisfies these four elements, an "'employer is subject to vicarious liability to a victimized employee.'"  *Watts*, 170 F.3d at 509 (quoting

---

[1] Gonzales argues that Williams has failed to exhaust the required administrative remedies. Certainly, the AJ's decision is devoid of any reference to a racial harassment claim.  Because Williams asserted a claim of racial harassment in his original EEO charge and alleged facts relevant to the issue, however, the court will assume *arguendo* that he satisfied the exhaustion requirement.  *See Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 795 (5th Cir. 2002).

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998); *Ackel v. National Comm., Inc.*, 339 F.3d 376, 383 (5th Cir. 2003); *Felton*, 315 F.3d at 484.[2]

Racially "'discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII.'"   *Walker*, 214 F.3d at 626 (quoting *Wallace*, 80 F.3d at 1049 n.9); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997)).   "Hostile work environment" racial harassment occurs when an employer's conduct "'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'"   *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)).   To survive summary judgment on a hostile work environment claim based on race, the nonmovant must create a fact issue as to each of the following elements:   "(1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment."   *Walker*, 214 F.3d at 625 (citing *DeAngelis*, 51 F.3d at 594); *accord Felton*, 315 F.3d at 485.   Whether a work environment meets these criteria depends upon the totality of the circumstances.   *See Harris*, 510 U.S. at 22; *Hockman*, 407 F.3d at 326; *Septimus*, 399 F.3d at 611; *Walker*, 214 F.3d at 625.

---

[2] Although the Supreme Court's decisions in *Faragher* and *Ellerth* deal with claims of sexual harassment, their reasoning is equally applicable to claims of racial harassment.   *See Walker*, 214 F.3d at 626 n.13; *Allen*, 165 F.3d at 411; *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1269 (10th Cir. 1998).

To be actionable, the challenged conduct must be sufficiently severe or pervasive as to create an environment that a reasonable person would find hostile or abusive considering all the circumstances. *See Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998); *Septimus*, 399 F.3d at 611; *Felton*, 315 F.3d at 485*; Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Allen*, 165 F.3d at 410; *Wright-Simmons*, 155 F.3d at 1269; *Weller*, 84 F.3d at 194. "These [circumstances] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or merely an offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *see Septimus,* 399 F.3d at 611; *Walker*, 214 F.3d at 625; *Wright-Simmons*, 155 F.3d at 1269. Conduct in the workplace that could be labeled as "harassment" will not fall within the purview of Title VII, however, if (1) it fails to affect a term, condition, or privilege of employment or (2) it is not based on a prohibited discriminatory animus. *See Trujillo v. University of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998) (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.), *cert. denied*, 516 U.S. 826 (1995) (citing *Vinson*, 477 U.S. at 67)); *see also Felton*, 315 F.3d at 485. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . [plaintiff's protected status].'" *Oncale*, 523 U.S. at 80 (emphasis in original) (quoting 42 U.S.C. §§ 2000e-2(a)(1)); *see Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *Haynes v. BlueCross & BlueShield of Tex., Inc.*, No. Civ. A. 3:97-CV-2881-R, 2000 WL 140744, at *12 (N.D. Tex. Feb. 4, 2000).

Moreover, to establish a viable racial harassment claim, the plaintiff must present "'more than a few isolated incidents of racial enmity.'" *Bolden*, 43 F.3d at 551 (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1417-18 (10th Cir. 1987)); *see Chavez v. New Mexico*, 397 F.3d 826,

832 (10th Cir. 2005); *Trujillo*, 157 F.3d at 1214.  "Title VII 'was only meant to bar conduct that

is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the

workplace,' and therefore conduct that only 'sporadically wounds or offends but does not hinder'

an employee's performance is not actionable." *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D.

Tex. 1996), *aff'd*, 134 F.3d 368 (5th Cir. 1997) (quoting *Weller*, 84 F.3d at 194); *see also*

*Hockman*, 407 F.3d at 326; *Shepherd v. Comptroller of Pub. Accounts of Tex.*, 168 F.3d 871, 874

(5th Cir.), *cert. denied*, 528 U.S. 963 (1999).  "'[S]imple teasing,' offhand comments, and

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S.

at 82) (citations omitted); *see Hockman*, 407 F.3d at 328; *Shepherd*, 168 F.3d at 874.  The "'mere

utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would

not sufficiently alter terms and conditions of employment to violate Title VII." *Faragher*, 524

U.S. at 787 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S.

957 (1972)); *see Hockman*, 407 F.3d at 328; *Shepherd*, 168 F.3d at 874; *DeAngelis*, 51 F.3d at

595.

Here, Williams does not contend that another employee made any racially derogatory

remarks to him or used any racial slurs in his presence.  Williams's complaints of animosity,

criticism, and threatened disciplinary action fall far short of actionable racial harassment.  *See*

*Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1163-64 (7th Cir. 1994).  Discourtesy or rudeness

should not be confused with racial harassment.  *See Faragher*, 524 U.S. at 787.  "The complained

of conduct must have either a sexual or a racial character or purpose to support a Title VII claim."

*Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir.), *cert. denied*, 528 U.S. 874

(1999); *see Trujillo*, 157 F.3d at 551.  "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."  *Vinson*, 477 U.S. at 67.  Moreover, a lack of racial sensitivity does not, alone, amount to actionable harassment.  *See Faragher*, 524 U.S. at 807.  Williams has failed to show that any purported racially-based conduct on the part of Gonzales, Chandler, or any other BOP employee was of such a severe and pervasive nature as to support a racial harassment claim.  "[V]ague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment."  *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998).

Williams enumerates several incidents which he maintains constitute racial harassment. First, he complains that Chandler allegedly ordered African-American employees to disperse among the inmate population during meals, pursuant to policy, but permitted white employees to dine together, contrary to policy, on seven or eight separate occasions.  While perhaps distasteful, such inconsistent implementation of otherwise legitimate workplace rules simply is not "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Hockman*, 407 F.3d at 326.

Next, Williams alleges that, on December 13, 2000, Chandler threatened plaintiff with disciplinary action at a department head meeting.  He further contends that Chandler instigated two separate disciplinary investigations into Williams's conduct.  None of these incidents, however, led to any official sanction against Williams.  Such sporadic conduct, resulting in no adverse employment consequences towards plaintiff, and without any evidence that they were motivated by racial animus, cannot form the basis for a hostile work environment claim.  *See id.*; *Frank*, 347 F.3d at 138.

Additionally, Williams claims that Chandler undermined his performance by understaffing his department.  Nonetheless, Williams acknowledges that he consistently received outstanding performance reviews during Chandler's tenure.  Williams further complains that Chandler jeopardized his performance review by pointing out certain sanitation problems in front of reviewers.  Sanitation problems, however, are not listed as an area of concern on his performance review, which was largely favorable.  Williams also alleges that Chandler offended him by permitting an associate warden to present a performance award to an African American, while Chandler himself presented performance awards to white employees.  Finally, Williams's EEOC charge and affidavits are filled with conclusory allegations that Chandler harassed and encouraged a hostile work environment toward African Americans.

These alleged acts of harassment by Chandler are insufficient to support a *prima facie* case of racial harassment under Title VII.  The purported harassment is simply not sufficiently severe to affect a term, condition, or privilege of employment such as to "[destroy] a protected classmember's opportunity to succeed in the workplace."  *Hockman*, 407 F.3d at 326. Consequently, Williams is unable to raise a genuine issue of material fact in support of the fourth prong of a *prima facie* case of racial harassment, and summary judgment is mandated on this claim.

III.   Conclusion

Summary judgment is warranted on all of Williams's claims.  Williams's causes of action under 42 U.S.C. §§ 1981 and 1983 are preempted by Title VII.  His Title VII disparate treatment claim fails because the record is devoid of evidence that similarly situated, non-black employees were treated differently.  Williams's retaliation claim must be rejected because he cannot establish

29

that he engaged in activity protected by Title VII.  Likewise, summary judgment is proper on his

Title VII hostile work environment claim, as the purported harassment was not sufficiently severe

to trigger the protections of the statute.

Accordingly, Gonzales's Motion to Dismiss, or Alternatively, for Summary Judgment is

GRANTED.  Williams fails to present a claim that merits relief.  There remain no material facts

in dispute, and Gonzales is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 14th day of December, 2005.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE